# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3660

_____

United States of America,       *
      *
          Appellant,       *
      *    Appeal from the United States
    v.       *    District Court for the
      *    Southern District of Iowa.
Robert Stanford Johnson,       *
      *
          Appellee.       *

_____

Submitted: October 18, 2006
Filed: Feburary 5, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury found Robert Stanford Johnson (Johnson) guilty of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court granted Johnson's post-trial motion for judgment of acquittal with respect to the two firearm counts, and conditionally granted a new trial on the same counts in the event the judgment of acquittal was vacated or reversed on appeal. The government appeals. We reverse the district court's judgment of acquittal and conditional grant of a new trial, and remand with instructions to reinstate the jury's verdict on both firearm counts.

## I.     BACKGROUND

On October 21, 2004, officers of the Des Moines (Iowa) Police Department executed a search warrant at a Des Moines residence, located at 1826 Ninth Street. This residence served as a drug distribution center, in other words, a crack house. Upon executing the search warrant, officers found Johnson in the residence's northeast bedroom asleep on a bed next to an infant. On top of a dresser located next to Johnson, and within his reach, was a shoebox with a torn lid covering half of the box. Inside the shoebox was a loaded Taurus .38 caliber handgun, covered by tissue paper. A search of the bedroom closet revealed several small empty Ziploc plastic baggies and Johnson's state identification card. Officers also found a cable bill for the residence registered in Johnson's name. A search of Johnson's pants' pockets yielded approximately five grams of cocaine base and over $1,500 in cash.[1]

A grand jury indicted Johnson on four counts: (1) conspiracy to distribute cocaine base, (2) possession with intent to distribute cocaine base, (3) possession of a firearm in furtherance of a drug trafficking offense, and (4) being a felon in possession of a firearm. The government dismissed the conspiracy charge, and the case proceeded to trial on the remaining three counts.

Desseray Wright (Wright), Johnson's girlfriend and co-defendant, lived at the residence and was present during the search on October 21, 2004. Pursuant to a plea agreement, Wright pled guilty to conspiracy to distribute cocaine base and possession of a firearm in relation to drug trafficking. At trial, Wright testified Johnson was a frequent visitor, who did not live at the residence but stayed there "on and off." Wright verified Johnson shared the northeast bedroom with her when he stayed at the

---

[1]Officers also discovered throughout the residence numerous other items relating to the distribution of controlled substances, including cash, drugs, a digital scale, and plastic baggies, as well as two other firearms.

residence, and Johnson's family members dropped by the house on a daily basis. According to Wright, although her name was on the residence's lease and the household utilities, Michael Montgomery (Montgomery), Wright's co-conspirator, actually paid the residence's rent. Wright testified, notwithstanding Johnson's name on the cable bill, Johnson never paid this bill before being "locked up." Wright further testified Johnson did not participate in any crack distribution activities with Wright or Montgomery.

During the October 2004 search, officers also located two other firearms in the residence: the first under a couch in the living room and the second inside a purse in a dresser located in the bedroom where Johnson was sleeping. Wright testified Montgomery brought both of these firearms into the residence. According to Wright, she saw Montgomery with one of the firearms two days before the search and told Johnson about it, causing Johnson to become upset that Wright allowed someone to bring a firearm into the house. Wright never observed Johnson in possession of any of the three firearms. Wright also testified the shoebox itself, containing the Taurus .38 caliber handgun, belonged to her and was usually stored in the bedroom closet. In her testimony, Wright denied owning the Taurus .38 caliber handgun or knowing anything about it. Wright neither placed the handgun in the shoebox nor knew who moved the shoebox to the dresser. Wright also denied seeing the shoebox on the dresser or removing a portion of the lid. Wright further testified that on the day of the search (1) Johnson was alone, sleeping most of the day in the northeast bedroom; and (2) Wright was the only one to enter the bedroom, and did so when she placed her infant sister in the bed with Johnson.

In support of his case, Johnson presented the testimony of his younger brother, Nolan Allen (Allen), who testified the Taurus .38 caliber handgun found in the shoebox belonged to Allen. Allen stated he put the gun in the shoebox in his "brother's room," and placed the shoebox on the floor beside the bed before Johnson

arrived at the residence.  Allen also verified the residence's northeast bedroom was Johnson's, and stated Johnson kept a few items in the bedroom.

Johnson also testified in his defense.  Johnson stated that at the time of the search in October 2004, Johnson rented and stayed at his own residence at 1614 Arlington Avenue in Des Moines, the same address listed on Johnson's state identification card.  Johnson visited Wright at least once a day and stayed the night once or twice each week, sleeping in Wright's northeast bedroom.  Johnson testified that when Wright told him Montgomery brought a gun into the residence, Johnson told Wright to make Montgomery get rid of the gun, because Johnson was a felon and "can't be around weapons."  On October 21, 2004, Johnson arrived at Wright's residence around 3:00 p.m.  Before going to Wright's bedroom to rest, Johnson observed at least eleven people in Wright's residence, including Wright and Montgomery.

The jury convicted Johnson on all three counts.  Following trial, Johnson renewed his motion for judgment of acquittal and alternative motion for a new trial. The district court denied the motion as to the possession with intent to distribute count, but granted the motion as to the two firearm counts.  Alternatively, the district court ruled the guilty verdicts on the firearm counts were contrary to the weight of the evidence and a "miscarriage of justice may have occurred."  Thus, the district court conditionally granted Johnson's motion for a new trial on the firearm counts in the event this court vacated or reversed the district court's judgment of acquittal.

The government appeals, arguing the district court erred in granting Johnson's motion for judgment of acquittal, and in conditionally granting Johnson a new trial on the firearm counts.

## II.  DISCUSSION

### A.  Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, a district court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction.  A district court must consider a motion for judgment of acquittal with "very limited latitude" and must neither assess the witnesses' credibility nor weigh the evidence.  United States v. Thompson, 285 F.3d 731, 733 (8th Cir. 2002) (quotation omitted).  Rather, the district court must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdict.  Id.  "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt."  Id.  In reviewing a judgment of acquittal, we apply the same standard as the district court.  Id.

To convict Johnson under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm, the government was required to prove beyond a reasonable doubt (1) Johnson previously had been convicted of a crime punishable by a term of imprisonment exceeding one year, (2) Johnson knowingly possessed a firearm, and (3) the firearm had been in or had affected interstate commerce.  See United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004), cert. denied, 543 U.S. 1154 (2005).  The parties stipulated to the first and third elements, thereby making the critical issue whether Johnson knowingly possessed the Taurus .38 caliber handgun found in the bedroom in which Johnson was sleeping.  The government could prove this element with evidence showing Johnson had actual or constructive possession of the firearm.  United States v. Walker, 393 F.3d 842, 846-47 (8th Cir.), cert. denied, 126 S. Ct. 463 (2005).  "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself."  United States v. Claybourne, 415 F.3d 790, 795-96

(8th Cir. 2005) (quotation omitted). Possession need not be exclusive, but instead may be joint. Ortega v. United States, 270 F.3d 540, 545 (8th Cir. 2001).

In granting Johnson's motion for judgment of acquittal, the district court determined "the evidence was inadequate to permit a reasonable jury to find beyond a reasonable doubt that [Johnson] was guilty," relying, in part, on this court's opinion in United States v. Cruz, 285 F.3d 692 (8th Cir. 2002). Such reliance, however, is misplaced. Cruz addressed whether sufficient evidence supported two defendants' convictions for possession of methamphetamine with intent to distribute. Id. at 697. Recognizing a defendant's mere physical proximity to contraband is insufficient, by itself, to prove constructive possession, we reversed both defendants' convictions on this count, concluding the government presented insufficient evidence to prove the defendants had constructive possession of the drugs. Id. at 699-700. With regard to one defendant (Rufino Gonzales), we specifically found the government presented no evidence establishing the defendant's dominion and control over the drugs or the house in which the drugs were found. Id. at 699. We also noted the absence of the defendant's "personal effects or venue items" in the house, as well as the lack of any evidence indicating the defendant either resided at the house or had knowledge of and control over the drugs. Id.

Here, in contrast, law enforcement officers found Johnson sleeping in the residence's northeast bedroom within arms-reach of a shoebox donning a half-torn lid and containing the Taurus .38 caliber handgun, veiled in tissue paper. Inside the same room in the bedroom closet, officers found Johnson's state identification card and a cable bill for the residence bearing Johnson's name. Allen's testimony indicated Johnson kept other items in the northeast bedroom as well. Johnson, Wright, and Allen each testified Johnson shared the northeast bedroom with Wright when Johnson stayed at the residence. Johnson was present in the house on a daily basis, and slept in the house one or two nights each week. Wright also testified that on the day of the search, Johnson was the only adult in the bedroom for most of the day, and Wright

-6-

had been the only other person to enter the bedroom while Johnson was sleeping there. With regard to the shoebox, which Wright usually stored in the bedroom closet, Wright denied placing a handgun in the shoebox, moving the shoebox to the top of the dresser, seeing the shoebox on the dresser, or removing a portion of the shoebox's lid. Viewing the evidence in the light most favorable to the government and resolving all evidentiary conflicts in the government's favor, we hold a reasonable jury could have concluded Johnson constructively possessed the firearm.

Our decision comports with this circuit's precedent addressing the issue of constructive possession. See United States v. Davis, 449 F.3d 842, 846 (8th Cir. 2006) (holding the government presented sufficient evidence the defendant constructively possessed a firearm found in a house based on the presence of the defendant's pictures throughout the house, as well as the presence of men's clothing and a receipt bearing the defendant's name in the bedroom where firearm was located); Claybourne, 415 F.3d at 796 (finding sufficient evidence of the defendant's constructive possession of a firearm found in bedroom based on evidence of the defendant's dominion over the bedroom; the presence of the defendant's identification card, Social Security card, and a telephone bill in the defendant's name in the bedroom; and the manner in which the firearm was concealed); United States v. Boyd, 180 F.3d 967, 978-79 (8th Cir. 1999) (finding sufficient evidence of the defendant's constructive possession of a firearm found in a bedroom closet given the defendant's close proximity to the firearm at time of arrest; the testimony of the defendant's girlfriend, who leased the residence, that the bedroom belonged to the defendant; and the presence of the defendant's clothing and identification in the closet in which the firearm was discovered).

In so holding, we do note Allen's testimony indicating the firearm actually belonged to him, not Johnson, and that Allen placed the firearm in the shoebox shortly before Johnson's arrival at the residence. While a jury might have viewed this evidence as the more plausible explanation for the firearm's existence and concluded

Johnson did not knowingly possess the firearm, "the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006) (quotation omitted). The jury easily could have disbelieved Allen's story and concluded Allen was covering for his older brother. Indeed, "[w]e enjoy no greater vantage point on appeal than did the jury at trial, and we have no right to usurp the jury's role to judge the facts and make credibility findings." United States v. Porter, 409 F.3d 910, 915 (8th Cir.), cert. denied, 126 S. Ct. 504 (2005). Given the evidence of Johnson's well-known occupancy of the bedroom, the presence of his identification card and a cable bill bearing his name in the bedroom closet, testimony regarding the location of the shoebox containing the firearm, and Johnson's close proximity to the firearm at the time of the search, we conclude the evidence was sufficient to sustain Johnson's conviction for being a felon in possession of a firearm.

We reach a similar conclusion with regard to Johnson's conviction for possession of a firearm in furtherance of a drug trafficking offense, which required the government to prove Johnson possessed a firearm in furtherance of a drug trafficking crime and used or carried that firearm during and in relation to a drug trafficking crime. See 18 U.S.C. § 924(c)(1)(A). In light of our determination there was sufficient evidence Johnson knowingly possessed the firearm, and given Johnson's conviction for possession with intent to distribute cocaine base, we conclude sufficient evidence supports the jury's verdict on this count as well. See United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989) (per curiam) (finding "it unnecessary to engage in a protracted discussion" of defendant's attack on his conviction under 18 U.S.C. § 924(c), which essentially comprises the elements of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841, and unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)).

## B.    Conditional Grant of Motion for a New Trial

The government next argues the district court erred in conditionally granting Johnson's motion for a new trial on the two firearm counts, a decision which we review for an abuse of discretion. United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002) (standard of review). Federal Rule of Criminal Procedure 33(a) authorizes a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." However, motions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. Campos, 306 F.3d at 579. The jury's verdict must be allowed to stand unless "the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred." United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000) (quotation omitted). In determining whether a defendant is entitled to a new trial, the district court "may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." Walker, 393 F.3d at 847 (quotation omitted). If, after performing this task, the district court concludes "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Anwar, 428 F.3d 1102, 1109 (8th Cir. 2005), cert. denied, 126 S. Ct. 1806 (2006) (quotation omitted).

Applying these principles, we conclude the district court abused its discretion in granting Johnson's motion for a new trial on the two firearm counts. Notwithstanding the district court's proper citation to the aforementioned standards in its Rule 33 analysis, the district court failed to give due weight to the evidence tending to show Johnson knowingly possessed the firearm. Even assuming the district court credited Allen's testimony that he, not Johnson, owned the firearm and placed the firearm in the shoebox on the floor beside the bed, there was no testimony Allen removed a portion of the shoebox lid or placed the shoebox on the dresser before leaving the bedroom. Similarly, Wright testified she usually kept the shoebox in her

closet—the same closet in which Johnson's identification and the cable bill in his name were both found—and denied moving the shoebox to the dresser top or seeing the shoebox in that location. Moreover, Wright indicated after Johnson went in the bedroom to sleep, Wright and her infant sister were the only persons who entered the room before the search.

These facts, in combination with Johnson's close proximity to the shoebox containing the firearm at the time of the search, convince us the jury's guilty verdicts on the firearm counts must stand. The jury's verdicts, based on the record evidence and all the reasonable inferences drawn from the evidence, are not against the weight of the evidence and do not leave this court with the sense any miscarriage of justice may have occurred. The grant of a new trial under Rule 33 is reserved for "exceptional cases in which the evidence preponderates heavily against the verdict." See 3 Charles Alan Wright et al., Federal Practice and Procedure § 553 (3d ed. 2004). The case at bar does not fall within this category. Accordingly, we reverse the district court's conditional grant of a new trial.

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment of acquittal and its conditional grant of a new trial. We remand this case to the district court with instructions to reinstate the jury's verdicts on both firearm counts.

_____